IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| United States of America | ) | Cr. No. 5:07-1253-MBS-1 |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| Michael Anthony Darby, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Michael Anthony Darby ("Defendant"), a pro se prisoner, seeks to vacate, set aside, or correct

his sentence pursuant to 28 U.S.C. § 2255. Defendant filed the within § 2255 motion on July 18,

2012. ECF No. 294. On September 14, 2012, the United States of America (the "Government")

filed a response and a motion for summary judgment. ECF Nos. 303, 304. Pursuant to *Roseboro*

*v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court issued an order on September 17, 2012, advising

Defendant of the summary judgment procedure and the possible consequences if he failed to respond

adequately. ECF No. 307. Defendant filed a reply to the Government's response on November 26,

2012. ECF No. 312.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant was indicted with a co-defendant, Melvin G. Wright ("Wright"), on October 17,

2007. ECF No. 1. The Government filed a superseding indictment on December 19, 2007. ECF

No. 52. The superseding indictment charged that between 2003 and 2007, Defendant and Wright

participated in a conspiracy to possess with intent to distribute and to distribute 500 grams or more

of cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846 ("Count 1"); and

that on December 1, 2006, Defendant and Wright possessed with intent to distribute and did

distribute five (5) grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B),

and 18 U.S.C. § 2 ("Count 2").  The superseding indictment further charged Defendant with two counts independent of Wright, including a count of possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B) and 841(b)(1)© ("Count 3"); and a count of using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) ("Count 4").

On October 6, 2008, Defendant filed a motion requesting that the court sever the trial of Count 1 and Count 2 from Count 3 and Count 4.  ECF No. 113.  On November 25, 2008, the court granted Defendant's motion to sever.  ECF No. 141.  Defendant proceeded to trial on Count 1 and Count 2 of the indictment with Wright on December 17, 18, and 19, 2008.

At trial, the Government presented evidence that law enforcement orchestrated a controlled buy involving Defendant.  A confidential informant, Keesha Nicole Williams ("Williams"), testified that on or around November 30, 2006, she contacted Lieutenant Samuel Jenkins of the Orangeburg Department of Public Safety and explained that she could "help him bring down Michael Darby." ECF No. 202 at 5.  Williams testified that, at the direction of law enforcement, she made arrangements with Defendant to purchase one ounce of crack cocaine in exchange for $850.00.  ECF No. 202 at 7-8 & 102.  The Government presented evidence of recorded phone calls between Williams and Defendant leading up to the controlled buy on December 1, 2006.  *Id.* at 7-8.

On December 1, 2006, Williams drove to Defendant's apartment with audio and video recording devices installed on her car.  *Id.* at 17.  Upon arriving, Defendant informed Williams that he only had "salt," or powder cocaine, and he would have to "cook it up" before he could provide her with the "hard," or crack cocaine, that she sought to purchase.  *Id.* at 18-19.  Defendant further instructed Williams to meet him at Wright's residence to retrieve the crack cocaine.  *Id.* at 20.

2

Defendant informed Williams that the price for one ounce of crack cocaine would be $850.00. *Id.* at 19.

Audio and video surveillance presented at trial established that Williams then traveled to Wright's mobile home, where she waited outside in her vehicle. *Id.* at 22-28. Williams testified that Defendant eventually arrived at Wright's residence and went inside without speaking to Williams. *Id.* at 27. According to Williams, Wright completed the transaction by handing her crack cocaine through a window and retrieving the $850.00 in cash. *Id.* at 28. Williams then left the property and contacted Lieutenant Jenkins, who instructed Williams to call Defendant and inquire as to why Defendant did not personally deliver the crack cocaine to her but instead had Wright deliver the crack cocaine. *Id.* at 36-37. Williams testified that she then called Defendant and asked him "why . . . he had to put [Wright] in [their business]," telling him that "the next time [she and Defendant] handle business for [Defendant] to do it his self." *Id.* at 37. Williams testified that Defendant responded that "[Wright] makes all his transactions." *Id.* Shortly thereafter, Williams met with law enforcement at a fire station and produced the crack cocaine that she purchased from Wright. *Id.* at 202. A chemical analysis established that Williams purchased 23.97 grams of crack cocaine. *Id.* at 87.

At trial, Defendant's and Wright's trial counsel each cross-examined Williams about her personal and financial motivations to serve as a confidential informant for law enforcement, *id.* at 55; inconsistencies between the biographical information she provided to law enforcement in 2006 and her direct testimony, *id.* at 47 & 57-59; and inaccuracies in her testimony about the sequence of events that occurred on December 1, 2006, *id.* at 67-68. Defendant's and Wright's trial counsel also

3

cross-examined law enforcement witnesses about various shortcomings in their investigative and surveillance techniques. *See* ECF No. 203 at 3-8, 12-13, 21-26, 32-36, 47-51, 67-73.

In addition to the testimony of Williams, the Government produced two witnesses who, at the time of trial, were in the custody of the Bureau of Prisons serving sentences for drug offenses. The first of these witnesses to testify, Joe Roger Moultrie ("Moultrie"), testified that after selling Defendant 28 grams of crack cocaine for $900 in 2002, he became a supplier for Defendant. *Id.* at 90-92. From 2002 up until Moultrie's arrest in 2004, Moultrie testified that he supplied Defendant with at least 28 grams of crack cocaine at least once or twice a month. *Id.* at 92. During this time period, Moultrie testified that he would supply Defendant with the drugs and Defendant would pay Moultrie later after Defendant sold the drugs. *Id.* at 94. During his time supplying Defendant, Moultrie estimated that he sold Defendant, in total, five kilograms of crack cocaine. *Id.*

The second incarcerated witness to testify on behalf of the Government was Stacey Shannon ("Shannon"). Shannon testified that Defendant first purchased four and a half ounces of crack cocaine from him in the spring of 2003. *Id.* at 128. Shannon testified that he continued to provide Defendant with cocaine until 2007, during which time Shannon testified that Defendant would make purchases from him anywhere from "twice a week to maybe twice a day, sometimes, even three times a week." *Id.* at 129, 131. During each of these transactions, Shannon testified that Defendant would purchase anywhere from 125 grams to 2 kilograms of cocaine powder. *Id.* at 132. More specifically, Shannon testified that of the estimated 500 kilograms of cocaine he received while dealing, he supplied at least 200 kilograms of that cocaine to Defendant. *Id.* at 134. Shannon further testified that Wright was often present during the drug transactions between Defendant and Shannon. *Id.* at 135-36.

4

Following this testimony, on December 19, 2008, a jury found Defendant guilty on both Count 1 and Count 2 and his co-defendant Wright not guilty on Count 1 and guilty on Count 2. ECF No. 180. On December 24, 2008, Defendant filed a motion for acquittal. In his motion, Defendant argued that there was insufficient evidence to support the guilty verdict on Count 1 and Count 2. ECF No. 184. On April 20, 2009, the court denied Defendant's motion for acquittal. ECF No. 221.

On January 4, 2010, Defendant was sentenced to a 292-month term of imprisonment. ECF No. 245. On January 13, 2010, Defendant filed a notice of appeal, appealing both the jury's guilty verdict on Count 1 and Count 2 and his 292-month term of imprisonment. ECF No. 253. On appeal, Defendant argued that, with respect to Count 1, there was insufficient evidence that Defendant made an agreement to conspire with anyone other than Wright, and Wright's acquittal created insufficient evidence that Defendant had conspired with Wright. Defendant further argued that, with respect to Count 2, there was insufficient evidence to convict Defendant. Finally, with respect to sentencing, Defendant contested his sentence on the following grounds: (1) the evidence was insufficient to show that Defendant distributed at least 200 kilograms of powder cocaine and 5 kilograms of crack cocaine; (2) the firearm enhancement under U.S.S.G. § 2D1.1(b)(1) was improper; and (3) the district court abused its discretion is refusing to provide funding for a psychiatric evaluation prior to sentencing. On November 29, 2011, the United States Court of Appeals for the Fourth Circuit rejected Defendant's arguments on appeal and affirmed the judgment of the court in its entirety. ECF No. 287.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(a), the court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to

judgment as a matter of law. The evidence presents a genuine issue of material fact if a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The facts and any inferences drawn from the facts should be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment bears the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party makes this showing, the opposing party must set forth specific facts showing there is a genuine issue for trial. *Id.*

## III. DISCUSSION

A federal prisoner in custody may challenge the fact or length of his detention by filing a motion pursuant to 28 U.S.C. § 2255. To receive relief under § 2255, a defendant is required to prove by a preponderance of the evidence that his sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). If this showing is made, the court must "vacate and set the judgment aside" and "discharge the prisoner or resentence him or grant a new trial to correct the sentence as may appear appropriate." *Id.* § 2255(b). If, on the other hand, "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court may summarily deny the motion without holding a hearing. RULES GOVERNING SECTION 2255 PROCEEDINGS 4(b); *see* 28 U.S.C. § 2255(b) (a hearing is not required on a § 2255 motion if the record of the case conclusively shows that the prisoner is entitled to no relief).

As a general rule, when a prisoner attacks his sentence based upon errors that could have been but were not pursued on direct appeal, the prisoner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. *See United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982)); *United States v. Maybeck*, 23 F.3d 888, 891–92 (4th Cir. 1994)). To show that a denial of the § 2255 motion would result in a miscarriage of justice, the prisoner must show actual innocence. *Mikalajunas*, 186 F.3d at 493. Actual innocence means factual innocence, not merely the legal insufficiency of his conviction or sentence. *Bousley v. United States*, 523 U.S. 614, 623–24 (1998). A "prisoner[] asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found [the prisoner] guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536–37 (2006) (internal quotation marks omitted). By contrast, a prisoner may bring an ineffective assistance of counsel claim in a § 2255 proceeding whether or not he raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Defendant raises the following five grounds for relief in his § 2255 motion:

**Ground one**: Ineffective assistance of counsel for failing to adequately advise Defendant of a formal plea offer.

**Ground two**: Improper application of a firearm enhancement under U.S.S.G. § 2D1.1(b)(1) at sentencing.

**Ground three**: Evidence was insufficient to sustain a conviction of conspiracy on the basis that co-defendant Wright was acquitted on Count 1.

7

**Ground four**: Ineffective assistance of counsel for failing to request a buyer/seller jury instruction.

**Ground five**: Ineffective assistance of counsel for failing to object to the court's failure to include drug quantity as an element of the offenses.

The court will first address Defendant's second and third grounds for relief, followed by Defendant's three ineffective assistance of counsel grounds.

**A.  *Grounds Two and Three***

Grounds Two and Three allege the improper application of a firearm enhancement under U.S.S.G. § 2D1.1(b)(1) at sentencing and the insufficiency of the evidence to sustain a conviction of conspiracy, respectively.  However, the Government contends that these issues were already raised by Defendant on direct appeal and rejected by the Fourth Circuit.  On this basis, the Government contends that Defendant's petition must be denied as to these two grounds.

"[I]t is well settled that [a defendant] cannot 'circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion.'"  *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (citing *United States v. Linder,* 552 F.3d 391, 396 (4th Cir.2009)).  *See also United States v. Roane*, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion).  In that regard, issues fully considered on direct appeal from conviction cannot be asserted again in a collateral § 2255 proceeding.  *See Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (finding a criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by [the Fourth Circuit] [on direct appeal]").

8

1.    Ground Two: Firearm Enhancement

With respect to Ground Two, that is, the alleged improper application of a firearm enhancement under U.S.S.G. § 2D1.1(b)(1) at sentencing, the court construes two separate arguments made by Defendant: (1) the evidence was insufficient to support the application of the enhancement under U.S.S.G. § 2D1.1(b)(1) and (2) the application of the firearm enhancement under U.S.S.G. § 2D1.1(b)(1) violated Defendant's Second Amendment rights.  *See* ECF No. 294-1 at 7-12.  As to the first argument regarding the sufficiency of the evidence, the court finds that this argument has been previously addressed on direct appeal and cannot be relitigated in Defendant's § 2255 motion.  Specifically, on direct appeal, Defendant contended that the evidence presented by the Government was insufficient to connect his firearm possession to his drug trafficking offense. The Fourth Circuit considered this argument and reached the following conclusion:

> To support the firearm enhancement, the Government relied on assertions in the presentence investigation report ("PSR") and [Defendant]'s statement to Special Agent Brown. The PSR reflected that upon [Defendant]'s arrest at his residence on November 8, 2007, agents found 3 firearms, including a .45 caliber pistol [Defendant] admittedly retrieved from his nightstand when the agents entered his home to execute a search warrant. The Government proffered that 400 grams of powder cocaine was found in [Defendant]'s master bedroom and 471 grams of powder cocaine was found in total. Further, agents found 39.4 grams of crack cocaine, a set of digital scales, body armor, and $5,611.00 in U.S. currency at [Defendant]'s residence. We find that the Government met the preponderance of evidence standard in arguing that the guns, cocaine, drug paraphernalia, and body armor all indicate that [Defendant] used the guns to protect himself and the drugs, which in turn shows that the weapons were used in connection to the charged offense. We therefore hold that there was no clear error on part of the district court in applying the firearm enhancement.

ECF No. 287 at 16-17.  The Fourth Circuit's holding on direct review bars further consideration on collateral review of Defendant's claim regarding the insufficiency of evidence to sustain the firearm enhancement under U.S.S.G. § 2D1.1(b)(1).

9

Further, as to Defendant's second argument regarding the Second Amendment, because Defendant did not present this argument on direct appeal, the court finds this argument to be procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice[.]'"). Even assuming, *arguendo*, that Defendant's Second Amendment argument is not procedurally defaulted, the court finds that the argument is without merit. Specifically, Defendant contends that an application of the two-point enhancement violates his Second Amendment right to keep and bear arms as recognized in *D.C. v. Heller*, 554 U.S. 570 (2008). In *Heller*, while the Supreme Court recognized that the Second Amendment secures an individual's right to keep handguns in the home, the Court also noted that its opinion should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. In enumerating these specific instances of lawful firearm regulation, the court noted that it "identif[ied] these presumptively lawful regulatory measures only as examples" and this list "does not purport to be exhaustive." *Id.* at 627 n. 26. As such, "*Heller* had no effect on the Guidelines' directive to enhance a Guidelines range if a weapon was present during the commission of the crime." *United States v. Cooper*, 351 F. App'x 814, 817 (4th Cir. 2009). *See also United States v. Greeno*, 679 F.3d 510, 520 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 375 (2012) ("The Section 2D1.1(b)(1) enhancement, like other historical restrictions on the possession and use of weapons, punishes an individual who possesses a dangerous weapon for an unlawful purpose and, thus, it falls outside the scope of the Second Amendment

10

right."); *United States v. Bowers*, 8:05CR294, 2009 WL 962143, at *1 n.1 (D. Neb. Apr. 7, 2009) ("Among the limitations on the right to keep and bear arms is that citizens do not have a right to use them in connection with criminal activity.").

Based on the foregoing, the court finds that Defendant's second ground for relief is both precluded by the Fourth Circuit's holding on direct review and procedurally defaulted. Further, even assuming Defendant's Second Amendment argument is not procedurally defaulted, the court finds that such argument is without merit. As such, the court will grant the Government's motion for summary judgment with respect to Ground Two of Defendant's § 2255 motion.

2.     Ground Three: Insufficient Evidence of a Conspiracy

With respect to Ground Three, that is, the sufficiency of the evidence to sustain a conviction of conspiracy, Defendant contends that because his co-defendant Wright was acquitted on Count 1, Defendant's conspiracy conviction cannot stand, as he cannot be guilty of a one-man conspiracy. Additionally, Defendant contends the evidence presented with respect to the conspiracy charge in Count 1 was insufficient to convict Defendant. The court finds that this argument has been previously addressed on direct appeal and cannot be relitigated in Defendant's § 2255 motion. Specifically, on direct appeal, Defendant contended that the evidence presented by the Government was insufficient to support the finding of a conspiracy, including the fact that Wright was acquitted on Count 1. The Fourth Circuit considered this argument and reached the following conclusion:

> As a preliminary matter, we reject the notion that [Defendant]'s conviction should be vacated on the conspiracy charge merely because his co-conspirator Melvin Wright was acquitted on the same charge. It is well established that an acquittal of the appellant's alleged co-conspirator does not necessitate that the appellant's conviction be vacated. *See United States v. Powell*, 469 U.S. 57, 65 (1984) (holding that a defendant cannot challenge his conviction merely because it is inconsistent with jury's verdict of acquittal on another count); *United States v. Collins*, 412 F.3d 515,

11

519-20 (4th Cir. 2005) (refusing to overturn a conspiracy conviction merely because a co-conspirator was acquitted by the same jury); *United States v. Thomas*, 900 F.3d 37, 40 (4th Cir. 2002) (holding that an acquittal of sole co-conspirator does not require reversal of defendant's conviction); *see also United States v. Andrews*, 850 F.3d 1557, 1561 (11th Cir. 1988) (en banc) ("Consistent verdicts are unrequired in joint trials for conspiracy: where all but one of the charged conspirators are acquitted, the verdict against the one can stand."); *United States v. Vales-Valencia*, 823 F.3d 381, 382 (9th Cir. 1987) ("the acquittal of all conspirators but one does not necessarily indicate that the jury found no agreement to act"). Thus, a jury can acquit Wright and still find that a conspiracy existed between [Defendant] and Wright.

[Defendant] seems to argue more precisely that given Wright's acquittal, the totality of the evidence does not substantially show that [Defendant] conspired with either Wright or anyone else. We disagree. To prove a conspiracy to possess cocaine base with intent to distribute, the Government must establish that: (1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy. *See United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir. 1984). Viewing the evidence most favorably to the Government, we find that there was sufficient evidence to support a conviction for the conspiracy charge.

ECF No. 287 at 9-12. The Fourth Circuit then specifically noted portions of the testimony offered at trial by Williams, Moultrie, and Shannon as sufficient evidence to establish a conspiracy. *Id.* at 12. In that regard, the Fourth Circuit considered Defendant's arguments regarding Wright's acquittal as to Count 1 as well as the sufficiency of the conspiracy evidence overall. The Fourth Circuit's holding on direct review bars further consideration on collateral review of Defendant's claim regarding the insufficiency of evidence to sustain his conspiracy conviction.

Based on the foregoing, the court finds that Defendant's third ground for relief is without merit. As such, the court will grant the Government's motion for summary judgment with respect to Ground Three of Defendant's § 2255 motion

**B. Ineffective Assistance of Counsel: Grounds One, Four, and Five**

Defendant contends that his trial counsel was constitutionally ineffective in the following

12

three respects: 1) trial counsel failed to adequately advise Defendant of a formal plea offer; 2) trial counsel failed to request a buyer/seller jury instruction; and 3) trial counsel failed to object to the court's failure to include the drug quantity as an element of the offenses.

To prove ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms. *Id.* at 688. A defendant also must demonstrate that he was prejudiced by trial counsel's alleged deficient performance, in that because of trial counsel's unprofessional errors, the result of the proceeding would have been different. *See id.* at 694. *Strickland* requires a defendant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* Even if counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment. *Id.* at 694.

With respect to a consideration of the two-pronged test of deficiency and prejudice outlined in *Strickland*, an evidentiary hearing is required under Section 2255 unless it is clear from the pleadings, files, and records that a movant is not entitled to relief. *See United States v. Witherspoon*, 231 F.3d 923, 925-27 (4th Cir. 2000). *See also United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992) ("When a colorable Sixth Amendment claim is presented, and where material facts are in dispute involving inconsistencies beyond the record, a hearing is necessary."). However, "no [evidentiary] hearing is required if the petitioner's allegations cannot be accepted as true because they

13

are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Jackson v. United States*, 638 F. Supp. 2d 514, 528 (W.D.N.C. 2009) (internal quotations omitted). Whether an evidentiary hearing is necessary, and whether a petitioner's presence is required, is left to "the common sense and sound discretion" of the district court. *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970).

    1.  Ground One: Trial Counsel's Failure to Adequately Advise Defendant of a Formal Plea Offer

Defendant asserts that his trial counsel was ineffective for failing to adequately advise him of a formal plea offer. Specifically, Defendant contends that his trial counsel, Jonathan Milling ("Mr. Milling"), "never, at anytime, explain [sic] to [Defendant] the effects of any plea offer or what he would be pleading guilty to" and "[t]here was never any written communication from defense counsel to [Defendant] - concerning the plea offer." ECF No. 294-1 at 3-5. Instead, Defendant contends that Mr. Milling "advised [Defendant] that he only faced a ten year maximum if he goes to trial, and that there was no way possible that [Defendant] could receive a higher sentence." *Id.* at 4. Defendant further contends that because Mr. Milling did not adequately explain the ramifications of accepting or rejecting a plea, Defendant was prejudiced by having to go to trial instead of pleading guilty. *Id.* at 6.

In response, the Government contends that Defendant's allegations of ineffective assistance are unsupported by the record and the charges Defendant faced. ECF No. 303 at 16. To support this contention, the Government provides an affidavit from Mr. Milling, Defendant's trial counsel, in which Mr. Milling attests that he informed Defendant of all relevant plea information. *See* ECF No. 303-1 at 2. Based on this affidavit, the Government contends that Defendant does not meet his

burden with respect to his ineffective assistance of counsel claim based on the plea negotiations. ECF No. 303 at 16-17.

In *Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012), the Supreme Court reiterated that a Defendant's Sixth Amendment right to effective assistance of counsel extends to the plea-bargaining process. More specifically, where the prejudice alleged is standing trial instead of accepting a plea, *Lafler* recognized that the following elements must be shown in order to sustain an ineffective assistance of counsel claim: (1) a [petitioner] must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) that the court would have accepted its terms; and (3) that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. *Lafler*, 132 S. Ct. at 1385.

After considering the record, the court finds that an evidentiary hearing is warranted due to existing issues of fact and credibility. In Mr. Milling's affidavit, he indicates that on September 11, 2008, he wrote Defendant "confirming a telephone conversation wherein [he] advised [Defendant] of a plea offer by the Government, the 15 year mandatory minimum sentence [Defendant] faced in connection with that plea, as well as the suggestion by the Government that with [Defendant's] continued cooperation [Defendant] could receive a sentence below 10 years." ECF No. 303-1 at 1. Mr. Milling provided a copy of the letter, dated September 11, 2008 and addressed to Defendant, in which he details this information surrounding Defendant's plea options. *Id.* at 5. However, in his reply, Defendant provided a declaration in which he states that "[he] never received the September 11, 2008 letter, nor did [he] and Mr. Millings [sic] discuss the real difference between a plea and a

15

trial as Millings [sic] has crafted in the September 11, 2008 letter." ECF No. 312-2.

Mr. Milling further provides in his affidavit that on November 26, 2008, he advised Defendant of a second plea offer which would have allowed Defendant to plea to a lesser included charge included in Count 1, but Defendant refused to meet with Mr. Milling because "[Defendant] would not accept a plea that would subject him to more than five years in prison." ECF No. 202-1 at 2. However, in his reply, Defendant's declaration states that "[if] Mr. Millings [sic] would have demonstrated to Me [sic] that I would receive more than 10 years upon jury verdict, I would not have proceeded to trial." ECF No. 312-2 at 2.

While the Government contends that Defendant's allegations that Mr. Milling's advised Defendant that he only faced ten years at trial are "wholly unsupported by the record and the charges [Defendant] was facing," the Government cites only to Mr. Milling's affidavit to support this contention. *See* ECF No. 303 at 16. However, Defendant has provided a declaration disputing the factual accuracy of Mr. Milling's affidavit. Thus, determining whether Defendant's assertions are correct regarding his counsel's plea negotiation conduct necessarily requires a credibility assessment. *See Raines*, 423 F.2d at 530 ("When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive."). Such a credibility determination cannot be made before the court holds an evidentiary hearing in which it can make the factual findings necessary to rule on Ground One of Defendant's § 2255 motion. *See United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004) ("[W]here the ultimate resolution rests on a credibility determination . . . an evidentiary hearing is especially warranted."). *See also United States v. Mitchell*, 484 F. App'x 744, 745 (4th Cir. 2012) (remanding to the district court for an evidentiary hearing based on the defendant's claim that his attorney failed to advise him of the possibility of pleading guilty without

cooperation where nothing in the record rebutted such claim and the claim was not so patently frivolous as to warrant summary dismissal).

Based on the foregoing, the court finds that genuine issues of material fact exist as to whether trial counsel was ineffective for failing to adequately inform Defendant during the plea negotiation process. Pursuant to this finding, the court will hold an evidentiary hearing in accordance with Rule 8 of the Rules Governing § 2255 Proceedings with respect to Ground One.

2. <u>Ground Four: Trial Counsel's Failure to Request a Buyer/Seller Jury Instruction</u>

Defendant asserts that his trial counsel was ineffective in failing to request a buyer/seller jury instruction informing the jury that a buyer/seller relationship does not suffice as proof of a conspiratorial relationship between the buyer and seller. ECF No. 294-1 at 13. Specifically, Defendant asserts that "he had requested Mr. Millings [sic] to request for a specific buyer/seller instruction, and that Mr. Milling told [Defendant] that there was no need to request for such an instruction, because a conviction in this case would only be for a ten year term and that there is no way that the district court would allow such a request." ECF No. 312-1 at 6. Defendant further contends that his trial counsel should have requested an "informant/accomplice instruction" to highlight that certain testifying witnesses received benefits from the Government in exchange for their testimony. ECF No. 294-1 at 15. In response, the Government contends that Defendant cannot meet his burden with respect to the prejudice prong of *Strickland*, as the court included a buyer/seller instruction and an informant/accomplice instruction in charging the jury. ECF No. 303 at 20.

"As a general proposition[,] a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."

17

*Mathews v. United States*, 485 U.S. 58, 63 (1988). "A buyer-seller instruction informs the jury that where the defendant is merely a buyer or seller in a drug transaction, that evidence, standing alone, is insufficient to establish a conspiracy to distribute narcotics." *United States v. Arey*, 5:05CR00029-2, 2009 WL 2596611, at *5 (W.D. Va. Aug. 21, 2009) (citing *United States v. Mills*, 995 F.2d 480, 485 n.1 (4th Cir. 1993)). "[A]n informant/accomplice instruction is appropriate when the testifying informant/accomplice receives some benefit such as monetary compensation or immunity in exchange for his testimony." *Brooks v. United States*, CIV. A. 3:05-0163, 2011 WL 1043550, at *10 (S.D.W. Va. Feb. 15, 2011), *report and recommendation adopted*, CIV. A. 3:05-0163, 2011 WL 1043503 (S.D.W. Va. Mar. 18, 2011).

Even assuming, as Defendant alleges, that Defendant's trial counsel was deficient in failing to request a buyer/seller jury instruction and an informant/accomplice jury instruction, the court finds that Defendant has failed to show that this deficient performance prejudiced Defendant. A review of the jury instructions indicate that, with respect to a buyer/seller instruction, the court charged the following:

> In addition, mere evidence of the existence of a buyer-seller relationship is insufficient to convict one as a co-conspirator on drug conspiracy charges. To convict, the government must prove beyond a reasonable doubt the existence of the conspiracy alleged in the indictment involving the defendants. Further, business, familial, or social association with others who may be guilty of crimes does not support the inference that the accused was himself guilty of participating in the crime.

ECF No. 178 at 10. Further, with respect to an informant/accomplice instruction, the court changed the following:

> You heard testimony about an agreement between the Government and the witnesses. I must caution you that it is no concern of yours why the Government made an agreement with a witness. Your sole concern is whether a witness has given truthful testimony here in this courtroom before you.

18

There has also been testimony from government witnesses who pleaded guilty after entering into an agreement with the government to testify. There is evidence that the government agreed to dismiss one or more charges against one or more of these witnesses and/or agreed to move for a reduced sentence if the witness provided substantial assistance in exchange for the agreement to plead guilty and testify. The government also promised to bring the witnesses' cooperation to the attention of the sentencing court.

Such plea bargaining, as it is called, has been approved as lawful and proper. It is expressly provided for by the rules of this court, and the government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict a defendant on the basis of this testimony alone, if it convinces you of the defendant's guilt beyond a reasonable doubt.

However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different than an ordinary witness. Therefore, you must examine his or her testimony with caution and weigh it with great care. If, after scrutinizing his or her testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

You have heard the testimony of one or more witnesses who may be providing evidence for the government in the hope that they will not be further prosecuted for the things about which they are testifying. The government may present the testimony of someone who is hoping for favorable treatment in his own case in exchange for his testimony. Some witnesses in this position may be truthful when testifying. On the other hand, some witnesses may be affected by their own personal interest, their prejudice against a defendant or their fear of punishment. The testimony of these witnesses should be examined with greater caution and weighed with great care, checked against the facts which you find to exist, and then given such weight as you deem proper.

You have heard the testimony of an informer. The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by you with greater care than the testimony of an ordinary witness. You, the jury, must determine whether the informer's testimony has been affected by interest or by prejudice against a defendant.

*Id.* at 5-6. A consideration of the charges given by the court indicates that the court did in fact charge the jury with a buyer/seller instruction as well and an informant/accomplice instruction.

More specifically, the jury was informed that evidence of a buyer/seller relationship is not, in and of itself, sufficient to establish a conspiracy. Further, the jury was informed about specific prejudices that may arise from testimony from an informant or accomplice. Accordingly, the court finds that Defendant has not sustained his burden of showing any prejudice as a result of his trial counsel's alleged failure to request a buyer/seller or informant/accomplice instruction.

Based on the foregoing, the court finds that Defendant's fourth ground for relief is without merit. As such, the court will grant the Government's motion for summary judgment with respect to Ground Four of Defendant's § 2255 motion.

### 3. Ground Five: Trial Counsel's Failure to Object to the Court's Failure to Include the Drug Quantity as an Element of the Offense

Defendant asserts that his trial counsel was ineffective in failing to object to the court's failure to include drug quantity and as element of the offense. Specifically, the jury found the amount and type of controlled substances attributable to Defendant as follows: 50 grams or more of cocaine base ("crack") and 500 grams of more of cocaine. ECF No. 180 at 1-2. However, because the verdict form did not require the jury to state the specific quantity of drugs attributable to Defendant, Defendant contends that the court's determination of the specific drug amount attributable to Defendant for the purposes of sentencing violated his constitutional rights. ECF No. 294-1 at 16-17. In making this argument, Defendant relies on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Supreme Court recognized that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490.

In response, the Government contends that Defendant cannot meet his burden of showing

ineffective assistance because *Apprendi*'s requirement to charge the applicable threshold drug quantity and submit this fact to the jury for a determination beyond a reasonable doubt "only applies to the threshold quantities used to establish a defendant's *statutory* sentencing range under Title 21, U.S.C. Section 841(b)." ECF No. 303 at 22. The jury convicted Defendant of a conspiracy to possess with intent to distribute 50 grams or more of cocaine base ("crack") and 500 grams of more of cocaine. *See* ECF No. 180 at 1-2. The Government contends that "a conviction on the cocaine alone would authorize a statutory sentencing range of 5 years to 40 years in prison" under 21 U.S.C. § 841(b)(1)(B). ECF No. 303 at 22-23. Because Defendant's sentence of 292-months imprisonment falls within the statutory range found by the jury's verdict, the Government contends that Defendant cannot show that trial counsel was ineffective by not requesting the jury find specific guideline drug quantities. *Id.* at 23.

After considering the arguments of both parties and the record in the case, the court finds that Defendant has failed to sustain his burden of demonstrating ineffective assistance with respect to the specific drug amounts. In the context of 21 U.S.C. § 841, "*Apprendi* dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense." *United States v. Promise*, 255 F.3d 150, 156 (4th Cir. 2001). However, under *Apprendi*, all facts that could serve to increase a defendant's sentence need not be found by the jury beyond a reasonable doubt. Instead, "*the maximum penalty* that may be imposed upon a defendant is *the maximum penalty* allowed by statute upon proof of only those facts alleged in the indictment and found by the jury beyond a reasonable doubt . . . [and] [o]nce this maximum penalty is established, a fact (sentencing factor) that may increase the actual sentence

21

imposed *within* that maximum is not subject to the same requirements." *Promise*, 255 F.3d at 157 n.5.

As the Government highlights, the jury convicted Defendant of a conspiracy to possess with intent to distribute 50 grams or more of cocaine base ("crack") and 500 grams of more of cocaine, thus subjecting Defendant to a statutory range of 5 years to 40 years based on the 50 grams of cocaine base alone. *See* ECF No. 180; 21 U.S.C. § 841(b)(1)(B). The sentence of 292-months imprisonment imposed on Defendant does not exceed the statutory maximum range established by the jury verdict. Thus, the court finds that Defendant's trial counsel was not ineffective in failing to request that the court require the jury to find the specific quantity of drugs attributable to Defendant. *See Apprendi,* 530 U.S. at 481 ("We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment *within the range* prescribed by statute . . . [as] judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case.").

Based on the foregoing, the court finds that Defendant's fifth ground for relief is without merit. As such, the court will grant the Government's motion for summary judgment with respect to Ground Five of Defendant's § 2255 motion.

## IV. CONCLUSION

For these reasons, the Government's motion for summary judgment is **GRANTED** except as to Defendant's first ground for relief, that is, whether Defendant's trial counsel was ineffective in failing to adequately advise Defendant of a formal plea offer. The court holds Defendant's first

ground for relief in abeyance pending an evidentiary hearing.[1]  Counsel will be appointed for this hearing under 18 U.S.C. § 3006A, as provided by Rule 8, unless Defendant elects to obtain his own counsel.  Defendant must inform the court if he elects to obtain his own counsel within thirty (30) days from the date of this order.  If the court does not receive this notice from Defendant, the court will appoint counsel under 18 U.S.C. § 3006A.  Any appointment of counsel will be limited solely to the evidentiary hearing addressing Defendant's first ground for relief.  Defendant is directed to bring to this hearing any and all supporting documentation he has in his possession regarding this issue.  A notice of hearing will be issued from the Office of the Clerk of Court.

**IT IS SO ORDERED.**

s/Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina
June 27, 2014

---

[1]    The court recognizes that Defendant has also filed a Motion to Reinstate Initial Plea, ECF No. 302, and a Motion for Summary Reversal and to Remand with Instructions, ECF No. 307.  Both of these motions rest on allegations of ineffective assistance of counsel with respect to the plea negotiation process.  Because the instant order holds this ground for relief in abeyance pending an evidentiary hearing, the court does not address these two pending motions in the instant order.  Instead, the court will address Defendant's two additional pending motions in conjunction with the resolution of Defendant's first ground for relief following an evidentiary hearing.